**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **KATIE JACKSON**, individually, and on behalf of all others similarly situated,  )  )  )  )  Plaintiffs,  )  v.  )  )  **WALGREEN PHARMACY SERVICES MIDWEST, LLC**,  )  )  )  )  Defendant.  )  | Case No.: 24-cv-04178 |

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY MOTION
FOR CONDITIONAL COLLECTIVE CERTIFICATION AND COURT-AUTHORIZED
NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)**

I.      **Introduction**

Knowing that Plaintiff Katie Jackson and Opt-in Plaintiffs Sheridan Bradley and Tatiana Clark (hereinafter, collectively "Plaintiffs") have readily satisfied their lenient burden under the standard two-stage process regularly relied on by this Court and federal courts across the country, Defendant Walgreen Pharmacy Services Midwest, LLC (hereinafter, "Defendant") again desperately pleas for this Court to reject the widely-accepted two-step process in favor of applying the inapplicable and controversial outlier standard from the Fifth Circuit. In support of its erroneous arguments, Defendant relies on "happy camper" declarations from its own managerial and supervisory officials—which, surprisingly, offer detailed support ***proving*** Plaintiffs' allegations of unpaid work time. From there, Defendant attempts to blame Plaintiffs themselves for its own unlawful conduct, classifying its flagrant violations of the law as 'misunderstandings' or Plaintiffs' failure to be paid for their hard work as their own 'choices to violate timekeeping policies.' Ultimately, Defendant's misplaced arguments regarding this Circuit's conditional certification process, and the supporting evidence regularly accepted at this stage, dooms its opposition. In the end, Plaintiffs' Motion and its accompanying evidence easily satisfy the first-stage requirements for distributing notice to the proposed Collective.

II.     **Courts in the Seventh Circuit Follow the Well-Established, "Fairly Lenient" Two-Step Approach When Considering Motions for Conditional Certification, and Defendant Has Failed to Present Any Reason Why This Court Should Stray From Applying This Roundly-Accepted Standard**

"District courts in the Seventh Circuit and around the country have long used the two-step conditional certification process." *Piazza v. New Albertsons*, No. 20-cv-03187, 2021 U.S. Dist. LEXIS 163417, at *4 (N.D. Ill. Aug. 16, 2021). Defendant cites to one single nonbinding instance in which a lone judge in this Circuit, from the Eastern District of Wisconsin, used and applied the controversial and inapplicable standard found in *Swales v. KLLM Transp. Servs.*, LLC, 985 F.3d

1

430 (5th Cir. 2021); however, even in that instance, the court admitted that "*Lusardi* 'remains the dance'" in this Circuit. *Laverenz v. Pioneer Metal Finishing, LLC*, No. 22-C-692, 2024 WL 3887110, at *6 (E.D. Wis. Aug. 21, 2024) (quoting *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776 (N.D. Ind. 2021)). As argued in Plaintiffs' Response to Defendant's Motion to Stay, courts across the country, including this Court, have previously and routinely rejected similar pleas from Defendant to apply this inapplicable, out-of-circuit standard, reasoning that *Swales* represents an "outlier" case, *Piazza*, 2021 U.S. Dist. LEXIS at *8, and a misguided attempt to legislate from the bench. (*See Clark v. Cap. Vision Servs., LLC,* 2022 WL 2905356, *1 (D. Mass. July 22, 2022) ("*Swales*, however, does not represent the prevailing standard in this circuit and in others.")).[1] Defendant fails to offer any justification which would necessitate departure from the two-step certification jurisprudence found throughout this Circuit and this Court's decision in *Piazza*, and Defendant's citations to inapplicable caselaw suggesting this Court adopt a heightened standard should entirely be rejected.

### III.  Defendant's "Happy Camper" Declaration Should Not Be Considered

While the entirety of Defendant's Response is premised upon considerations that are expressly reserved for review at the second stage of the conditional certification process, the

---

[1] "[T]he two-step process followed by the district court is widely approved by other circuits and used in many district courts." *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *2 (7th Cir. Sept. 1, 2021). It is no surprise that the *Swales* creep has been roundly rejected across the country. *Bah v. Enter. Rent-A-Car Co. of Bos.*, LLC, 560 F. Supp. 3d 366, 373 (D. Mass. 2021) (collecting cases); *see also Mazariegos v. Pan 4 Am., LLC*, 2021 WL 5015751, at *4 (D. Md. Oct. 28, 2021); *Learing v. Anthem Companies, Inc*., 2022 WL 594378, at *4 (D. Minn. Feb. 28, 2022); *Thomas v. Maximus, Inc*, 2022 WL 1482010, at *3 (E.D. Va. May 10, 2022); *Wright v. Waste Pro USA, Inc*., 2021 WL 1290299, at *3 (S.D. Fla. Apr. 6, 2021); *McCoy v. Elkhart Products Corp.*, 2021 WL 510626, *2 (W.D. Ark. Feb. 11, 2021). Interestingly, Defendant ignores the Sixth Circuit's standard found in *Clark v. A&L Home Care and Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023) (*see* ECF No. 23, PageID #124), which rejected *Swales.* In addition, as argued in Plaintiffs' Response to Defendant's Motion to Stay, Plaintiffs have already satisfied the *Clark* standard. (ECF No. 31).

linchpin in Defendant's improper contentions is its reliance on "happy camper" declarations from its own managerial and supervisory employees, allegedly demonstrating that Defendant's claimed violations of the law and failure to pay for the off-the-clock work experienced across the putative collective was mere "(1) a misunderstanding of Defendant's policies, or (2) a conscious choice to violate Defendant's timekeeping policies." (Def.'s Brief, ECF No. 34, pg. 8; *see also* ECF Nos. 34-1 – 34-16). However, district courts around the country have repeatedly rejected employers' attempts to avoid conditional certification by obtaining declaration testimony from hand-picked current employees who (not surprisingly) contradict the plaintiffs' descriptions of their job duties.[2] Here, Defendant obtained declarations largely from its hand-picked administrative and managerial employees who depend on Defendant's paychecks for their livelihood and who "declare" that Agents were paid correctly. Given these considerations, Defendant's "happy camper" declarations are underwhelming and, more importantly, simply not relevant at this stage of the case as it relates solely to the merits of the claim, something not at issue at this juncture.

Furthermore, Defendant's submission of counter-evidence is entirely inappropriate, as such evidence is not to be considered at the notice stage. As this Court has stated multiple times,

---

[2] *See e.g., Fitch v. Carey Counseling Ctr.*, 2018 U.S. Dist. LEXIS 238063, *10 (W.D. Tenn. Jan. 10, 2018) ("the 'happy camper' defense has been soundly rejected at this notice stage.") (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011)); *Goodman v. Burlington Coat Factory*, 2012 WL 5944000, at *6 (D. N.J. Nov. 20, 2012) (declining to consider defendant's 38 "happy camper" declarations submitted to show individual differences among the putative class because that type of inquiry prematurely addresses the merits). In fact, several courts have expressly questioned the reliability of declarations gathered by employers from current employees. *See e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060-61 (N.D. Cal. 2007) (*rev'd on other grounds*) (observing that the declarations from employees of a defendant presented in opposition to certification have "glaring reliability concerns" and carry with them "possible pressure arising from ongoing employment relationships . . . ."). These same reliability concerns apply to the declarations Defendant proffers in this case from past and current employees. Simply put, there is a possibility that Defendant's declarants made their statements under the threat of discharge, implied or otherwise. Accordingly, this Court should view the declarations with skepticism.

"[c]onditional certification is not the time to weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Piazza*, 2021 WL 365771 at *6; *see also Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008) ("Defendant's argument about dissimilarities in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery.")). Should Defendant wish to have this evidence evaluated, such considerations are reserved for the second step of this process, following the completion of the "opt in" period and discovery, and only then may Defendant may ask the court to "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Nehmelman v. Penn Nat. Gaming, Inc*., 822 F.Supp.2d 745, 751 (N.D. Ill. 2011). If at that juncture the Court finds insufficient similarities, it may revoke conditional certification or divide the class into subclasses. *Id*. (*see also Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008)).

Accordingly, Defendant's "happy camper" should not be considered, as its hand-picked testimony is both unreliable and inappropriate at the notice stage.

**IV.    Defendant's Own Proffered Evidence Demonstrates Conditional Certification of a Collective of Call Center Agents is Appropriate**

Even if this Court decides to consider Defendant's "happy camper" declarations, Defendant has, perhaps accidentally, produced evidence that proves Plaintiffs' claims that a uniform unlawful policy impacted the proposed Collective of Agents across the entire putative Collective. (ECF Nos. 34-1 – 34-16). While for the purposes of this Motion, Defendant's proffered

evidence and supporting documentation can largely be ignored,[3] the supportive declarations and exhibits provided by Defendant demonstrate:

1) Defendant employs thousands of hourly, non-exempt call center agents under various job titles, such as Pharmacy Technician, Centralized Specialist, Call Center Representative, Overnight Call Center Representative, or similar positions (hereinafter collectively referred to as "Agents"), who work in person or remotely from their homes providing customer and pharmacy support to Defendant's pharmacists and customers throughout the United States (ECF No. 34-1, ¶¶ 2-9; ECF No. 34-3, ¶¶ 2-5; ECF No. 34-6, ¶¶ 1-2; ECF No. 34-7, ¶ 1; ECF No. 34-9, ¶¶ 1-4; ECF No. 34-10, ¶ 1; ECF No. 34-11, ¶¶ 1-3; ECF No. 34-12, ¶¶ 1-3; ECF No. 34-13, ¶¶ 1-2);

2) Each of Defendant's Agents, no matter the state or location that they work from, boot-up and log-in to essential computer programs and applications which are necessary to complete their job duties (ECF No. 34-3, ¶¶ 6-9; ECF No. 34-6, ¶¶ 5, 7-10, 12-17; ECF No. 34-7, ¶¶ 5-8, 12; ECF No. 34-9, ¶¶ 5-8; ECF No. 34-10, ¶¶ 5-6; ECF No. 34-11, ¶¶ 4-10; ECF No. 34-12, ¶¶ 5-12; ECF No. 34-13, ¶¶ 4, 11, 15);

3) Defendant provides standardized training to all Agents on each of these essential computer programs and software applications, which includes training on the boot-up and log-in, the shut-down and log-out, and the timekeeping process (ECF No. 34-3, ¶¶ 10-17; ECF No. 34-6, ¶¶ 3-8, 14-20; ECF No. 34-7, ¶¶ 3-9; ECF No. 34-9, ¶¶ 4-5, 9, 12; ECF No. 34-10, ¶¶ 1-11; ECF No. 34-11, ¶¶ 4-6; ECF No. 34-12, ¶¶ 7-8; ECF No. 34-13, ¶¶ 3-4, 15);

4) Defendant requires Agents to complete this boot-up and log-in process, as well as complete a shut-down and log-out process, prior to and after their shifts, as well as during their lunch breaks (ECF No. 34-3, ¶¶ 6, 13-14; ECF No. 34-6, ¶¶ 5, 7-10, 12-17; ECF No. 34-7, ¶¶ 5-8, 12; ECF No. 34-9, ¶¶ 5, 9-14; ECF No. 34-10, ¶¶ 3-7; ECF No. 34-11, ¶¶ 4-10; ECF No. 34-12, ¶¶ 5-12; ECF No. 34-13, ¶¶ 4-12, 15-22);

5) Defendant does not pay for all of its Agents for this time. Instead, Defendant pays Plaintiffs and all others similarly situated based on the times they are punched in to Defendant's timekeeping systems and "phone ready," not the time that they performed their first and last principal activities of the workday.[4]

---

[3] "Conditional certification is not the time to weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Piazza*, 2021 WL 365771 at *6; *see also Jirak*, 566 F. Supp. 2d at 850 ("Defendant's argument about dissimilarities in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery.")).

[4] Defendant's proffered Declarations contend that Defendant pays for some of the time spent booting up and logging in to, and shutting down and logging out of, essential programs (allegedly up to 7 minutes before each shift and 6 minutes after). (*See, e.g.*, ECF No. 34-3, ¶ 13). However, Plaintiffs allege this bootup and shutdown process takes substantial time on a daily basis, ranging from ten to fifteen minutes before each shift per shift, three to five minutes during Agents

5

Defendant's supporting exhibits on their own are sufficient to warrant conditional certification and notice in this case. That evidence, when coupled with the allegations in Plaintiffs' Complaint and the supporting evidence provided in this Motion, eliminates any doubt that a similarly situated Collective of Agents exists who were all subject to uniform, unlawful pay policies as a result of Defendant's failure to properly compensate workers for time spent booting up and logging in to Defendant's essential computer programs and software applications.

Furthermore, in multiple declarations submitted by Defendant, the declarants admit that Agents often arrive to their computers to begin the bootup and login process ***up to sixty minutes prior*** to each shift, which lends support to Plaintiffs' position that Agents, by Defendant's own admission, arrive to their workstations up to sixty minutes prior to their scheduled shifts in order to complete the required bootup and login procedure and be "phone ready" the moment their shifts begin. *See, e.g*. ECF No. 34-9, ¶ 10 ("First (about 30 minutes or so before my scheduled shift starts): I turn on my computer, log in so I can see the home screen, and (sometimes) connect to the VPN."); ECF No. 34-12, ¶ 6 ("To help avoid these log-in issues, I recently started turning my computer on and logging into my computer so I get to the 'home screen' about 45-60 minutes before the scheduled start of my shift."). While one declarant attempts to dismiss this early arrival as a function of her 'anxiety,' ("I am a bit of an anxious person by nature, and I simply feel better knowing that my systems are working properly with plenty of time to troubleshoot if needed,")

---

scheduled meal breaks, and three to five minutes after each shift. (Doc. 1, ¶ 53; **Ex. C**, ¶ 9; **Ex. D**, ¶ 9; **Ex. E**, ¶ 9; Doc. 1, ¶¶ 62; **Ex. C**, ¶¶ 17-18; **Ex. D**, ¶¶ 17-18; **Ex. E**, ¶¶ 17-18; Doc. 1, ¶¶ 68-70; **Ex. C**, ¶¶ 19-21; **Ex. D**, ¶¶ 19-21; **Ex. E**, ¶¶ 19-21). Accordingly, even if Defendant pays each Agent 7 minutes prior to each scheduled shift and up to 6 minutes after each scheduled shift, this time does not account for all of the off-the-clock work Plaintiffs and Agents experience.

(ECF No. 34-9, ¶ 10 n. 1), both declarants admit that beginning this process early is essential to be "phone ready" prior to each scheduled shift. *Id*.

Moreover, multiple declarations submitted by Defendant attest that remote employees, prior to each shift, are required to a) power on or warm up their computers, b) access and log-in to the company VPN, c) access a browser, and finally, d) access Kronos to clock in. (*See* ECF No. 34-6, ¶¶ 9-10; ECF No. 34-7, ¶ 6; ECF No. 34-9, ¶¶ 6, 10; ECF No. 34-11, ¶¶ 5-14; ECF No. 34-12, ¶ 8. ECF No. 34-15, ¶¶ 7, 15, 20). Defendant claims this process takes "about one minute." (*See generally*, *Id*.). However, the U.S. Department of Labor has recognized this abuse, and Defendant's admission that Agents work off-the-clock for *at least* one minute per shift, is simply Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."[5] (*See* ECF No. 1-2, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards). Accordingly, by Defendant's own admission, each member of the putative collective worked remotely performed off-the-clock work for *at least* one minute per shift.

These facts, coupled with Plaintiffs' declarations which attest the same, demonstrate that Agents are required to engage in a necessary, detailed, and time-consuming bootup and login process which widespread across the putative collective. Accordingly, Defendant's own declarations, taken together with Plaintiffs' supplied evidence, supports a record of a proposed Collective of Agents across the country who are similarly situated with respect to their *allegations* that the law has been violated, which is all that is required at this stage.

---

[5] The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *See Id*., at p. 2.

7

## V. Plaintiffs Have Provided Sufficient, Probative Evidence Demonstrative of Similarly Situated Individuals

At the "notice" stage, to satisfy the burden necessary for conditional certification, plaintiffs may show **_either_**: (1) job positions and duties similar to those positions held by the putative class members, *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 848–49 (N.D. Ill. 2008); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010); **_or_** (2) that plaintiffs and the putative class members "together were victims of a *common policy or plan* that violated the law." *Russell,* 575 F.Supp.2d at 933 (quoting *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003)). Plaintiffs have pled allegations and provided supporting evidence, bolstered by Defendant's own declarations, satisfying the requirements of both pathways for FLSA conditional certification.

### A. Plaintiff has demonstrated that her job position and duties are similar to those held by the putative Collective members across the country.

Plaintiff has demonstrated that her job position and duties as an Agent are similar to those positions held by the putative Collective members. *Jirak*, 566 F. Supp. 2d at 848–49 (N.D. Ill. 2008); *Russell,* 575 F.Supp.2d at 938 ("The primary responsibilities of all those employees are receiving incoming customer calls, assisting with equipment and billing questions, and selling defendant's equipment and services … Under either 'similarly situated' test, [plaintiff] has satisfied her burden."). Plaintiffs' declarations and supporting exhibits, coupled with the factual allegations in the Complaint, demonstrate that Defendant's Agents had the same general job descriptions, duties and terms of employment. (*See generally,* ECF No. 1; ECF No. 18, **Exs. C - F**). While Defendant relies nearly entirely on declarations from managerial and supervisory officials whose contentions can largely be ignored at this stage, Plaintiffs have supplied three declarations from

8

call center Agents working in three different states whose testimony highlights that Defendant's Agents across the country, no matter the location, department, or job title, are similarly situated.

Plaintiffs have sufficiently demonstrated, at this notice stage, that no matter the job title or location, Defendant's Agents have the same general job description with the same general duties. (*See generally,* **Exs. C - F**). Defendant's proffered declarations can largely be ignored as premature and inapplicable at the notice stage, and in any event, do nothing to defeat the similarity of job duties for Agents across the putative Collective. In fact, throughout the entirety of Defendant's Response, and sixteen supplied supporting exhibits, Defendant entirely fails to challenge that the putative class is similarly situated with respect to its responsibilities and job duties. Accordingly, the allegations throughout Plaintiffs' Complaint, Plaintiffs' declarations, and Defendant's job descriptions, demonstrate that Plaintiff's job positions and duties are similar to those positions held by the putative Collective members, satisfying one of the pathways for conditional certification. This showing, alone, left entirely unchallenged, is sufficient to warrant collective certification. *Russell,* 575 F.Supp.2d at 938 (notice warranted merely by showing that job positions and duties of the collective were similar).

> **B. Plaintiffs have demonstrated that Agents were all subject to the same common policy or plan that violated the law.**

Defendant contends that Plaintiffs failed to demonstrate Agents were subject to the same unlawful common policy or practice, mainly by contending that Defendant has enacted numerous policies which purportedly prevent off-the-clock work. (Def.'s Brief, pg. 13). As mentioned previously, while Defendant's counter-evidence and allegations that all unlawful off-the-clock work across the entire collective is somehow prevented by policies in Agents' onboarding documents can largely be ignored, Plaintiffs, through their three declarations, have sufficiently demonstrated that Defendant employed uniform and company-wide pay practices with respect to

9

its Agents, and that Defendant ignored the law by refusing to pay its Hourly Employees for all off-the-clock pre-, mid-, and post-shift work. Accordingly, Plaintiff has readily satisfied the elements necessary for conditional certification.

To date, Plaintiffs have alleged and provided substantial evidence demonstrating that each putative Collective member worked as an Agent and had substantially similar job duties regardless across the entire putative Collective. (*See* ECF No. 1 at ¶¶ 2-4, 28-29, 34-36, 95; *see also* ECF No. 18, **Exs. C - E**, ¶¶ 3, 5-6, 22-24; **Ex. F).** Additionally, Defendant's unlawful pay policies and practices, as well as the nature of Defendant's job duties, were substantially the same, no matter the job title, department, or state the Agent worked in. (ECF No. 1, ¶ 95; *see generally* **Exs. C - E**; **Ex. F**). Likewise, the nature of Defendant's boot-up and log-in, and log-out and shut-down, policies at each facility where Plaintiff and putative Collective members were employed did not materially vary across departments. (ECF No. 1, ¶¶ 3-4, 35-40, 51-71, 95- 96; **Exs. C - E**, ¶¶ 5-6, 7-15, 16-18, 19-21, 22-24; *see also* (ECF No. 34-3, ¶¶ 6-9, 10-17; ECF No. 34-6, ¶¶ 3-8, 9-10, 12-20; ECF No. 34-7, ¶¶ 3-9, 12; ECF No. 34-9, ¶¶ 4-9, 12-14; ECF No. 34-10, ¶¶ 1-11; ECF No. 34-11, ¶¶ 4-10; ECF No. 34-12, ¶¶ 5-12; ECF No. 34-13, ¶¶ 3-12,15-22). This is further substantiated by Defendant's published Job Descriptions and submitted declarations, which demonstrate that, no matter the location or department, across each location, Defendant's Agents had similar job duties and were subject to uniform policies and procedures and all worked off the clock by their own admission. (*Id.*; *see also* **Ex. F**).

### C. Defendant Has Failed to Meaningfully Challenge Plaintiffs' Motion for Conditional Certification or Provide Any Legal or Factual Basis for the Denial of Plaintiffs' Motion.

As articulated *supra*, the overwhelming majority of Defendant's opposition is premised upon requesting that this Court make improper merits-based determinations which are expressly

10

reserved for the second stage of the conditional certification process. Defendant provides this Court with twelve pages of argument and sixteen exhibits in support, none of which defeat, at this early stage, 1) the similarity of job positions and duties amongst the putative collective, and 2) that all Agents were subjected to a common unlawful policy or plan by Defendant. Accordingly, as Defendant has failed to meaningfully challenge Plaintiffs' Motion, this Court should ignore Defendant's inappropriate attempts to have this Court make credibility determinations or weigh evidence, and instead choose to authorize notice to the putative collective.

Defendant first contends that Plaintiffs fail to "evince an unlawful common policy or practice" by arguing that Plaintiffs' allegations of required off-the-clock work "is conclusory and not based on any personal knowledge." (Def.'s Mot., pg. 20). Not only does this argument ignore the entirety of Plaintiff's Complaint which alleges Plaintiff's detailed experiences with pre-, mid, and post-shift off-the-clock work, as well as Plaintiffs' declarations demonstrating their personal knowledge of these requirements (ECF No. 18, **Exs. C-E**, ¶¶ 7, 10-14, 17), it ignores Defendant's own declarants who admit to working off-the-clock. (ECF No. 34-9, ¶ 10 ("First (about 30 minutes or so before my scheduled shift starts): I turn on my computer, log in so I can see the home screen, and (sometimes) connect to the VPN."); ECF No. 34-12, ¶ 6 ("To help avoid these log-in issues, I recently started turning my computer on and logging into my computer so I get to the 'home screen' about 45-60 minutes before the scheduled start of my shift."). Even fully crediting Defendant's arguments, all remote agents must work off the clock before they can possibly clock in on Kronos. These are not "conclusory" allegations; this is direct evidence of a common, collective-wide unlawful pay policy.

Next, Defendant objects to statements contained in Plaintiffs' declarations on the basis of hearsay and lack of personal knowledge, and further argues that conditional certification cannot

11

be granted on the basis that even if Plaintiffs were working off-the-clock, this is merely a 'mistaken reaction' to Defendant's "lawful" timekeeping policies. (Def.'s Mot., pg. 23). These arguments fail for the same reasons discussed above.

Plaintiffs' detailed allegations regarding Agents' off-the-clock work, supported by their own declarations, and further bolstered by Defendant's own admissions in its supplied declarations, provides this Court with overwhelming evidence of a similarly situated Collective of Agents who 1) work in person or remotely from their homes for Defendant,[6] 2) boot-up and log-in to essential computer programs and applications which are necessary to complete their job duties,[7] 3) received standardized training on these essential computer programs and the boot-up, log-in, and the timekeeping process,[8] 4) complete this boot-up and log-in process, as well as complete a shut-down and log-out process, prior to and after their shifts, as well as during their lunch breaks,[9] and 5) all of this off-the-clock work is unpaid. (*See generally*, ECF No. 1, ECF No. 18, **Exs. C-F**). Each of these statements detailing Agents personal experiences with Defendant's unlawful pay policies are premised upon their personal experiences and personal knowledge, and furthermore, not hearsay, as they are statements made by employees of Defendant within the scope of their employment relationship. (*See* Fed. R. Evid. 801(d)(2)(D)). Accordingly, the record is replete with admissible, firsthand accounts of systemic off-the-clock work by the collective and unlawful pay policies administered by Defendant. The record readily demonstrates, at this early

---

[6] ECF Nos. 34-1, ¶¶ 2-9; 34-3, ¶¶ 2-5; 34-6, ¶¶ 1-2; 34-7, ¶ 1; 34-9, ¶¶ 1-4; 34-10, ¶ 1; 34-11, ¶¶ 1-3; 34-12, ¶¶ 1-3; 34-13, ¶¶ 1-2.
[7] ECF Nos. 34-3, ¶¶ 6-9; 34-6, ¶¶ 5, 7-10, 12-17; 34-7, ¶¶ 5-8, 12; 34-9, ¶¶ 5-8; 34-10, ¶¶ 5-6; 34-11, ¶¶ 4-10; 34-12, ¶¶ 5-12; 34-13, ¶¶ 4, 11, 15.
[8] ECF Nos. 34-3, ¶¶ 10-17; 34-6, ¶¶ 3-8, 14-20; 34-7, ¶¶ 3-9; 34-9, ¶¶ 4-5, 9, 12; 34-10, ¶¶ 1-11; 34-11, ¶¶ 4-6; 34-12, ¶¶ 7-8; 34-13, ¶¶ 3-4, 15.
[9] ECF No. 34-3, ¶¶ 6, 13-14; 34-6, ¶¶ 5, 7-10, 12-17; 34-7, ¶¶ 5-8, 12; 34-9, ¶¶ 5, 9-14; 34-10, ¶¶ 3-7; 34-11, ¶¶ 4-10; 34-12, ¶¶ 5-12; 34-13, ¶¶ 4-12, 15-22).

stage, evidence of a similarly situated collective, necessitating a grant of conditional certification and the authorization of notice.

## VI. Plaintiffs' Proposed Notice is Appropriate in the Exact Form and Manner as Submitted to the Court

Plaintiffs' proposed Notice is in the form and manner regularly approved by federal courts across the country, throughout this Circuit, and by this Court. Accordingly, Notice should be distributed in the exact form and manner as proposed by Plaintiffs.

- Plaintiffs' proposed class definition is narrowly tailored to encompass each Agent who has been subjected to Defendant's unlawful pay policies as a result of their off-the-clock work. It can hardly be argued that the proposed definition is vague and ambiguous considering Defendant has already easily identified each member of the proposed Collective based upon this definition and informed the Court of the size of the collective. All that is required at this stage, and for the class definition, is for the Court to make an initial determination of whether *potential* similarly situated individuals exist. *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 547-48 (E.D. Mich. 2004) (see *Sperling v. Hoffmann-LaRoche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988) ("[N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim … to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.").

- Text message notice is regularly approved by courts across the country as a way of effectuating Congress's intent. To obtain the benefits of the FLSA depends "on employees receiving accurate and *timely* notice concerning the pendency of the collective action." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). As such, the goal of the Act, and in turn court-ordered notice, should be to achieve the maximum number of potential opt-ins so as to vindicate the purpose of the Act. In an effort to achieve this goal, numerous courts have approved the use of text message notice to secure the maximum number of opt-ins and ensure the FLSA's remedial goals are met. *See Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 903 (N.D. Ill. 2020) (approving text notice to FLSA collective); *Brashier v. Quincy Prop., LLC*, No. 3:17-CV-3022, 2018 WL 1934069, at *6 (C.D. Ill. Apr. 24, 2018) (same); *Rosebar v. CSWS, LLC*, No. 18 C 7081, 2020 WL 43015, at *4 (N.D. Ill. Jan. 3, 2020) (same); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F.Supp.3d 707, 711 (D.S.C. 2015) ("The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication."); *Owens v. GLH Capital Enter., Inc.*, 2017 WL 2985600, at *5 (S.D. Ill. July 13, 2017) (same).

- To facilitate timely notice, Plaintiffs request that the Court order Defendant, within ten days of the order conditionally certifying this action, to identify all FLSA Collective members by their full names, last known addresses, phone numbers, email addresses, and dates and location of employment. *See Perez v. A+ Bldg. Maint. and Home Repair, LLC*, 17-cv-01261, 2018 WL 2002420, at *8 (N.D. Ohio Apr. 30, 2018). The names, addresses, phone numbers, and email addresses of affected employees are plainly discoverable, and courts routinely order production of this information to effectuate the notice process. *Hoffmann-La Roche*, 493 U.S. at 170; *Westley v. CCK Pizza Co., LLC*, 2019 U.S. Dist. LEXIS 93015 at *16 (E.D. Mich. June 4, 2019) (ordering production of names, mailing and email addresses, and telephone numbers); *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009) (requiring production of phone numbers to aid in skip tracing). Moreover, the requested information should be produced to Plaintiffs' counsel directly. Plaintiffs' counsel treats such information as confidential, has extensive experience in facilitating the notice process, and has never encountered problems or accusations of mishandling such data. Allowing Defendant to shield this information from Plaintiffs' counsel while allowing Defendant to essentially oversee the notice process is totally improper and akin to putting the "fox in the hen house." There would be no way to confirm whether the employee list (or the contact information) is accurate and more difficult to assist potential Collective members who contact Plaintiffs' counsel with questions or concerns (as they always do).

- Courts throughout the country have wide discretion to and regularly approve of reminder notices. *See Boltinghouse v. Abbott Labs., Inc*., 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (held that plaintiff may send reminder notice as it was a reasonable procedure); *Black v. P.F. Chang's China Bistro, Inc*., 2017 WL 2080408, at *12 (N.D. Ill. May 15, 2017) (granted plaintiff's request to send reminder notice 30 days into 60 day opt-in period); *Soto v. Wings 'R US Romeoville, Inc*., 2016 18 WL 4701444, at *9 (N.D. Ill. Sept. 8, 2016) (granted plaintiff's request to send reminder notice 30 days into 60 day opt-in period); *Zolkos v. Scriptfleet, Inc*., 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (granted plaintiff's request to send reminder notice 30 days after mailing of initial notice). Further, the language in the reminder notice is not misleading, as the word "may" is not an improper characterization of a potential opt-in's eligibility.

- There is no need to "balance" or insert Defendant's legal position into the notice, other than to insert Defendant's denial. Notice is a FLSA plaintiff's communication with his co-workers, and, thus, "[a]bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Frykenberg v. Captain George's of South Carolina, LP*, 2020 WL 5757678, at *4 (D.S.C. Sept. 28, 2020) (quoting *Hose v. Henry Indus., Inc*., 49 F. Supp. 906, 919 (D. Kan 2014), *order clarified* by 2014 WL 5510927 (D. Kan. Oct. 31, 2014)); *see also Ivery v. RMH Fran. Corp*., 280 F. Supp. 3d 1121, 1139 (N.D. Ill. 2017) ("[A]lthough the Court has both the power and the duty to ensure that the notice is fair and accurate, that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary").

- As regularly approved by courts across the country, the limitations period for notice should be three years. Here, "[w]hether Defendant['s] alleged FLSA violations are willful is a

14

question better suited for a later stage of the litigation." *Rogers v. Webstaurant, Inc.*, No. 4:18-CV-00074-JHM, 2018 WL 4620977, at *4 (W.D. Ky. Sept. 26, 2018) (granting three-year limitations period) (quoting *Smith v. Generations Healthcare Servs., LLC*, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (internal quotation marks omitted); *see Carter v. Paschall Truck Lines, Inc.*, 2019 WL 1576572, at *4 (granting three-year limitations period because 'the most prudent approach at this early stage is to afford notice to a broader range of possible class members"); *see also Abney v. R.J. Corman R.R. Grp., LLC*, No. CV 5:17-260-DCR, 2017 WL 3723657, at *3 (E.D. Ky. Aug. 29, 2017) ("It is inappropriate to attempt to determine whether the defendant willfully violated the FLSA" in the first phase."); see also *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 690 (W.D. Ky. 2021) (approving limitations period of three years).

- Plaintiffs vehemently disagree with Defendant's that the possibility of liability for costs should be included in the proposed Notice. Defendant's intention for such a provision is to simply deter individuals from opting into the lawsuit in order to chill class participation. *See e.g.*, *Williams v. Cargill Meat Solutions Corp.*, 2010 U.S. Dist. LEXIS 72025 at *5 (E.D. Wis. June 30, 2010) (rejecting defendant's request to include "do not prevail" language and reasoning that "[c]ourts should not permit notice to chill participation in a [FLSA collective] action."). Many courts have overruled similar requests to include similar language into the notice, finding the statements are unnecessary and potentially confusing. *See e.g.*, *Sexton v. Franklin First Financial, Ltd*, 2009 WL 1706535 at *12 (E.D.N.Y. June 16, 2009). Another court found similar statements inappropriate "over the remote possibility that such costs for absent class members would be other than *de minimis,* and the absence of any showing by defendants that counterclaims are likely to be meaningful in this case ...." *Guzman v. VLM, Inc.,* 2007 WL 2994278 at *8 (E.D.N.Y. Oct. 11, 2007) *order clarified,* 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008). Additionally, the *Guzman* court concluded that a warning about assessment of costs may have an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree. *Id.* Similarly, in *Green v. Executive Coach and Carriage*, 895 F.Supp.2d 1026, 1030 (D. Nev. 2012), the court agreed, stating that the inclusion of similar language in the notice is not proper because it "'may have an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree.'" *Id.* (*quoting Guzman*, 2007 WL 2994278 at *8).

- Notice should be distributed to every member of the putative collective. Defendant has not, and cannot, cite to any authority which dictates that putative collective members are not eligible for or should not receive notice at this stage if they have previously settled a FLSA claim with Defendant.

## VII. <u>CONCLUSION</u>

For the reasons explained above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion in its entirety and authorize the distribution of notice to the putative collective.

15

Dated: January 16, 2025            Respectfully Submitted

                                           */s/ Matthew L. Turner*
                                           Matthew L. Turner
                                           Albert J. Asciutto
                                           SOMMERS SCHWARTZ, P.C.
                                           One Towne Square, 17th Floor
                                           Southfield, Michigan 48076
                                           Phone: (248) 355-0300
                                           Email: mturner@sommerspc.com
                                           Email: aasciutto@sommerspc.com

                                           *Attorneys for Plaintiff, the FLSA Collective,*
                                           *and the Putative Class*


## **CERTIFICATE OF SERVICE**

      I certify that on January 16, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                           */s/ Matthew L. Turner*
                                           Matthew L. Turner